```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JOSEPH BELLUOMO, and all other
individuals similarly situated,

                Plaintiff,

        -against-                        MEMORANDUM & ORDER
                                         14-CV-4402(JS)(AKT)
TIGER SCHULMANN'S MIXED MARTIAL
ARTS, and DANIEL SCHULMANN a/k/a
TIGER SCHULMANN,

                Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:      Saul D. Zabell, Esq.
                    Zabell & Associates, P.C.
                    1 Corporate Drive, Suite 103
                    Bohemia, NY 11716

For Defendants:     Scott Craig Levenson, Esq.
                    485 Boulevard
                    Elmwood Park, NJ 07407

                    David M. Fish, Esq.
                    3 Park Avenue, 28th Floor
                    New York, NY 10016
```

SEYBERT, District Judge:

Plaintiff Joseph Belluomo ("Plaintiff") commenced this diversity action on July 21, 2014 against defendants Tiger Schulmann's Mixed Martial Arts ("Tiger Schulmann") and Daniel Schulmann ("Mr. Schulmann," and together with Tiger Schulmann, "Defendants"), alleging claims of breach of contract, unjust enrichment and quantum meruit, partnership oppression, breach of fiduciary duty, and conversion. Currently pending before the Court are: (1) Defendants' motion to dismiss the Complaint for lack of

subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of personal jurisdiction over Mr. Schulmann pursuant to Federal Rule of Civil Procedure 12(b)(2), and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), (Docket Entry 13); and (2) Plaintiff's motion to disqualify Tiger Schulmann's in-house counsel and Defendants' attorney in this action, Scott Craig Levenson ("Mr. Levenson"), on the ground that he is a critical fact witness.  For the following reasons, Defendants' motion to dismiss is DENIED and Plaintiff's motion to disqualify Mr. Levenson is DENIED AS MOOT.

## BACKGROUND

Defendants operate a chain of martial arts schools.  In 1994, Defendants hired Plaintiff as a manager of their school in Massapequa, New York (the "School").  (Compl. ¶ 10.)  According to Plaintiff, he and Mr. Schulmann subsequently entered into an oral partnership agreement pursuant to which Plaintiff invested approximately $30,000 in exchange for a seven-and-one-half percent ownership interest in the School.  (Compl. ¶¶ 11, 13.)  Plaintiff alleges that within five years, he had invested approximately $270,000 in the School in exchange for a forty-nine percent ownership interest.  (Compl. ¶¶ 14-15.)  In 2012, the School was relocated to Seaford, New York.  (Compl. ¶ 24.)  Plaintiff contends that the relocation did not affect his ownership interest in the School.  (Compl. ¶ 25.)

2

The parties' relationship deteriorated thereafter. Plaintiff alleges that on July 17, 2014, he "engaged in a discussion" with Tiger Schulmann's accountant regarding Plaintiff's alleged entitlement to profits generated by a different school in Manhasset, New York. (Compl. ¶ 30.) According to Plaintiff, Mr. Schulmann, who apparently overheard the conversation, then "interjected, accosted Plaintiff, verbally and physically threatened him and falsely accused [him] or unspecified impropriety." (Compl. ¶ 34.) Later that day, Defendants allegedly changed the locks to the School and sold Plaintiff's ownership interest without compensating him. (Compl. ¶¶ 36, 38.)

Plaintiff then filed this action, alleging breach of contract, unjust enrichment and quantum meruit, partnership oppression, breach of fiduciary duty, and conversion. Defendants dispute Plaintiff's contention that the relocation of the School from Manhasset to Seaford did not affect Plaintiff's ownership interest. Rather, Defendants claim that Plaintiff "did not invest any capital in the Seaford location, and thus, never acquired an ownership interest therein." (Defs.' Opp. Br., Docket Entry 17, at 1[1].) In other words, Defendants appear to argue that the relocation of the School from Massapequa to Seaford reset Plaintiff's prior ownership interest.

---

[1] Page numbers of Defendants' briefs reference herein refer to the page numbers supplied by the Electronic Case Filing system.

3

On September 29, 2014, Defendants filed a motion to dismiss this action on several grounds, including improper service of the Summons and Complaint. (Docket Entry 13.) That same day, Plaintiff filed a letter requesting: (1) a pre-motion conference to discuss a proposed motion to disqualify Mr. Levenson as Defendants' attorney; and (2) a traverse hearing to challenge Defendants' improper service argument. (Docket Entry 12.) In his letter, Plaintiff claimed that Mr. Levenson is a necessary fact witness based on an audio recording of a conversation between Plaintiff and Mr. Levenson during which Mr. Levenson stated that Plaintiff had an ownership interest in the School.

On October 17, 2014, the Court held a conference to address Plaintiff's letter. The Court listened to Plaintiff's audio recording of his conversation with Mr. Levenson and directed Plaintiff's counsel to provide the Court with a transcript of the recording. (Docket Entry 15.) The Court also directed the parties to return for a traverse hearing on October 29, 2014. (Docket Entry 15.) At the conclusion of the traverse hearing, the Court found that service of the Summons and Complaint was proper. (Docket Entry 16.) Additionally, the Court permitted Plaintiff's counsel to make an oral motion to disqualify Mr. Levenson and also set a briefing schedule for the motion. Defendants filed their opposition on November 12, 2014, and Plaintiff filed a reply on

November 19, 2014. The motion to disqualify and the motion to dismiss are fully briefed.

DISCUSSION

I. Motion to Disqualify

On June 25, 2015, Plaintiff's counsel filed a letter on the docket stating that Mr. Levenson "expect[ed] to withdraw as counsel of record in this case in the immediate future." (Docket Entry 25, at 2.) On July 20, 2015, a new attorney, David M. Fish, entered his notice of appearance on behalf of Defendants, (Docket Entry 26), and there has been no activity on the docket by Mr. Levenson since. Thus, as it appears that Mr. Levenson has withdrawn from this case, Plaintiff's motion to disqualify is DENIED AS MOOT. Mr. Levenson is ORDERED to file a formal notice of withdrawal within seven (7) days of this Memorandum and Order.

II. Motion to Dismiss

Defendants advance the following arguments in their motion to dismiss: (1) the Court lacks subject matter jurisdiction over this case because Plaintiff cannot satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332; (2) the Court lacks personal jurisdiction over Mr. Schulmann; (3) the Complaint fails to state a claim against Tiger Schulmann's Mixed Martial Arts because Tiger Schulmann's Mixed Martial Arts is a trade name and not a cognizable legal entity; and (4) Plaintiff's causes of action based on the alleged oral partnership agreement should be dismissed

5

because the oral agreement is unenforceable under the statute of frauds. (Defs.' Br., Docket Entry 13-4.) The Court rejects each of these arguments for the reasons explained below.

A. Subject Matter Jurisdiction

As noted, Defendants argue that the Court lacks subject matter jurisdiction over this case because Plaintiff cannot satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332. (Defs.' Br. at 1-2.) The Court disagrees.

1. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "The party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction." Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. See Morrison v. Nat'l Australia Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008).

Under 28 U.S.C. § 1332, federal courts have diversity jurisdiction only when there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The "party invoking

the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount. Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994) (quoting Moore v. Betit, 511 F.2d 1004, 1006 (2d Cir. 1975)). "This burden is hardly onerous, however," because there is "'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003) (quoting Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)).

"To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." Id. (quoting Wolde-Meskel, 166 F.3d at 63). This is a very high bar: "The legal impossibility of recovery must be so certain as virtually to [negate] the plaintiff's good faith in asserting the claim. Even where the allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." Id. (internal quotation marks and citations omitted).

2. Analysis

Here, the Complaint alleges that the Court has diversity jurisdiction over Plaintiff's state law claims pursuant to 28

7

U.S.C. § 1332 and that the amount in controversy exceeds $75,000. (Compl. ¶ 2.) In support of this jurisdictional allegation, the Complaint alleges (1) that Plaintiff contributed approximately $270,000 in exchange for a forty-nine percent ownership interest in the School, (2) that he was entitled to fifty percent of the School's profits under his partnership agreement with Defendants; and (3) that Defendants sold Plaintiff's ownership interest without compensating him. (Compl. ¶¶ 15, 19, 38.) These allegations easily exceed the amount-in-controversy requirement, and Defendants have failed to rebut the presumption that the Complaint asserts a good faith representation of the amount in controversy. Defendants simply reiterate their argument that Plaintiff is not entitled to an ownership interest in the School because he never invested in it after it was relocated to Seaford. But this has to do with the merits of Plaintiff's claim, not whether Plaintiff has alleged that he is entitled to damages in excess of $75,000. Accordingly, Plaintiff has satisfied the amount-in-controversy requirement. Defendants' motion to dismiss for lack of subject matter jurisdiction is therefore DENIED.

B. Personal Jurisdiction

Defendants next argue that this Court lacks personal jurisdiction over Mr. Schulmann because he is not a domiciliary of the State of New York. (Defs.' Br. at 2.) The Court disagrees. As explained below, based on Plaintiff's allegations, the Court

may exercise personal jurisdiction over Mr. Schulmann under New York's long-arm statute, which provides for personal jurisdiction over an out-of-state defendant who transacts business within New York and where the cause of action at issue arises from that transaction of business. See N.Y. C.P.L.R. 302(a)(1).

1. Legal Standard

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010). The Court has "considerable procedural leeway" in resolving a pretrial motion to dismiss for lack of jurisdiction: "It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981) (citations omitted). A plaintiff's precise burden depends on how the Court elects to address the jurisdictional issue. Id. Short of "a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." Id. Although a plaintiff will still have to establish jurisdiction by a preponderance of the evidence at trial or a pretrial evidentiary hearing, "until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving

9

party, to defeat the motion." Id. (citations omitted). Thus, in considering a Rule 12(b)(2) motion, the Court construes the pleadings and affidavits in the light most favorable to the plaintiff and resolves all doubts in the plaintiff's favor. DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 85 (2d Cir. 2001).

2. Analysis

Whether a defendant is subject to personal jurisdiction involves a two-part analysis by a federal district court sitting in diversity. "First, a district court must determine whether, under the laws of the forum state (New York in this case), there is jurisdiction over the defendant." Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005) (emphasis added) (internal quotation marks and citation omitted). "'Second, [it] must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements.'" Id. (emphasis added) (alteration in original) (quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999)). As discussed below, Plaintiff has met both prongs for establishing personal jurisdiction over Mr. Schulmann.

a. New York's Long-Arm Statute

As noted, Plaintiff contends that the Court may exercise personal jurisdiction over Mr. Schulman under N.Y. C.P.L.R. 302(a)(1), which provides for jurisdiction over an out-of-state defendant if "[1] that party 'transacts any business within the

state' and [2] if the claim arises from these business contacts." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d. Cir. 2006) (quoting CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)). The Court agrees with Plaintiff.

"New York courts define 'transact[ing] business' as purposeful activity--'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (quoting McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382, 229 N.E.2d 604, 607, 283 N.Y.S.2d 34, 37-38 (1967)). An out-of-state defendant "need not be physically present in New York to transact business" under C.P.L.R. 302(a)(1). Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 169 (2d Cir. 2010). With respect to the second prong of C.P.L.R. 302(a)(1), a claim "'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon.'" Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) (alteration in original) (quoting McGowan v. Smith, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643 (1981)).

Here, construing Plaintiff's allegations in a light most favorable to him, Mr. Schulmann unequivocally transacted business within the meaning of C.P.L.R. 302(a)(1) by owning and operating

11

a chain of martial arts schools within the State of New York and entering into an agreement with Plaintiff to manage one of the schools. Additionally, Plaintiff's claims arise directly from this transaction of business, as he claims that Mr. Schulmann breached their agreement by locking Plaintiff out of his School and failing to pay him his ownership interest in the School.

    b.   <u>Due Process</u>

Having found that Mr. Schulmann's transactions fall within the reach of New York's long-arm statute, the next issue is whether the Court's exercise of jurisdiction over him comports with the Constitution's due process guarantees. <u>Asahi Metal Indus. Co. v. Cal. Super. Ct., Solano Cnty.</u>, 480 U.S. 102, 108-09, 107 S. Ct. 1026, 1030, 94 L. Ed. 2d (1987). These guarantees are satisfied when a defendant has certain minimum contacts with the forum state such that maintenance of the suit would not "offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington Off. of Unemployment Comp. & Placement</u>, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (internal quotation marks and citation omitted). The analysis involves two related inquiries: the "minimum contacts" inquiry and the "reasonableness" inquiry. <u>Chloé</u>, 616 F.3d at 171.

To establish that a defendant has the requisite minimum contacts with the forum, the plaintiff must show that the defendant "purposefully avail[ed]" itself of the privilege of doing business

in the forum such that the defendant "should reasonably anticipate being haled into court there." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980) (internal quotation marks and citation omitted); Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 242-43 (2d Cir. 1999).[2]

As noted above, Mr. Schulmann purposefully availed himself of the privilege of transacting business in New York. He owns and operates a chain of martial arts stores and entered into an agreement with Plaintiff to operate one of those schools. Consequently, Mr. Schulmann purposefully availed himself of the laws and privileges of New York, and could have reasonably foreseen being "haled" into court in New York in the event of a breach of their agreement. Accordingly, Mr. Schulmann's activities satisfy the minimum contacts prong of the due process analysis.

---

[2] The Second Circuit has noted that New York courts "tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard: whether the defendant's conduct constitutes 'purposeful[] avail[ment]' 'of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" See, e.g., Best Van Lines, 490 F.2d at 247 (quoting Hanson v. Denckla, 357 U.S. 235, 353, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958)); see also Thorsen v. Sons of Norway, 996 F. Supp. 2d 143, 158 (E.D.N.Y. 2014) ("Generally, the minimum contacts inquiry overlaps significantly with the 'transaction of business' inquiry under CPLR Section 302(a)(1)."). "However, because New York's long-arm statute encompasses a wider range of activity than the minimum-contacts doctrine, the Court must undertake an additional analysis under the due process clause." Thorsen, 996 F. Supp. 2d at 158 (citation omitted).

The exercise of jurisdiction over Mr. Schulmann also must not "offend traditional notions of fair play and substantial justice." Asahi, 480 U.S. at 113, 107 S. Ct. at 1028 (internal quotation marks and citation omitted). A court must consider five factors in determining whether the exercise of jurisdiction is reasonable: (1) the burden on defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." Id.; accord Chloé, 616 F.3d at 173.

"Where a plaintiff makes the threshold showing of the minimum contacts . . . , a defendant must present 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Bank Brussels, 305 F.3d at 129 (quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)). Here, Defendant does not even address the five factors for determining whether the exercise of jurisdiction is reasonable. Mr. Schulmann therefore has failed to meet his burden of demonstrating that it would be unreasonable to exercise jurisdiction in this case. Accordingly, because Plaintiff has demonstrated that the Court has personal jurisdiction over Mr. Schulmann under C.P.L.R. 302(a)(1) and that the exercise of such jurisdiction does not offend due process,

Defendants' motion to dismiss for lack of personal jurisdiction over Mr. Schulmann is DENIED.

    C.   <u>Plausibility</u>

Finally, Defendants argue that (1) the Complaint fails to state a claim against Tiger Schulmann's Mixed Martial Arts because Tiger Schulmann's Mixed Martial Arts is a trade name and not a cognizable legal entity; and (2) Plaintiff's causes of action based on the alleged oral partnership agreement should be dismissed because the oral agreement is unenforceable under the statute of frauds. The Court rejects both of these arguments.

    1.   <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007); <u>accord</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71–72 (2d Cir. 2009). <u>First</u>, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678; <u>accord</u> <u>Harris</u>, 572 F.3d at 72. <u>Second</u>, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. <u>Iqbal</u>, 556 U.S. at 679.

Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

The Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

2. Tiger Schulmann as a Defendant

The Court summarily rejects Defendants' argument that Tiger Schulmann is a trade name and therefore not a cognizable legal entity capable of being sued. It is obvious that Plaintiff intends to sue the entity that owns and operates the Tiger Schulmann martial arts schools. Plaintiff may take discovery to ascertain the accurate party being sued and later amend the caption. See Darby v. Compagnie Nat. Air France, 132 F.R.D. 354, 355 (S.D.N.Y. 1990).

3. Statute of Frauds

Finally, Defendants also argue that Plaintiff's claims based on the alleged oral partnership agreement are not plausible because the partnership agreement violates New York's Statute of Frauds and is therefore unenforceable. (Defs.' Br. at 3.) The Court disagrees.

Under New York's Statute of Frauds, an oral agreement is unenforceable if "[b]y its terms[, it] is not to be performed within one year from the making thereof." N.Y. GEN. OBLIG. LAW § 5-401. "The statute encompasses 'only those contracts which, by their terms, have absolutely no possibility in fact and law of full performance within one year.'" BPP Wealth, Inc. v. Weiser Capital Mgmt., LLC, --- F. App'x ----, 2015 WL 4999524, at *4 (2d Cir. 2015) (quoting Guilbert v. Gardner, 480 F.3d 140, 151 (2d Cir. 2007)); accord Foster v. Kovner, 44 A.D.3d 23, 26, 840 N.Y.S.2d 328, 331 (1st Dep't 2007). It is irrelevant "that completion of performance within one year may be unlikely or improbable." Foster, 44 A.D.3d at 26, 840 N.Y.S.2d at 331. Generally speaking, "[m]ost agreements terminable at will are not subject to the Statute of Frauds because performance could be completed in less than one year if either party were to exercise its termination option within that time period." BPP Wealth, Inc., 2015 WL 4999524, at *4. Moreover, the Statute of Frauds is "generally inapplicable" to a partnership agreement because

17

"absent any definite term of duration, an oral agreement to form a partnership or joint venture for an indefinite period creates a partnership or joint venture at will." Foster, 44 A.D.3d at 27, 840 N.Y.S.2d at 331.

The Statute of Frauds does not bar Plaintiff's claims at this stage of the litigation. "An affirmative defense, such as the Statute of Frauds, may be raised by a motion to dismiss under Rule 12(b)(6) without resort to summary judgment proceedings only if the defense appears on the face of the complaint." Seldon v. Magedson, No. 11-CV-6218, 2012 WL 4475274, at *20 (S.D.N.Y. July 10, 2012), report and recommendation adopted by, No. 11-CV-6218, 2012 WL 4475020 (S.D.N.Y. Sept. 28, 2012). Here, there is no indication in the Complaint that the alleged partnership agreement could not possibly be performed within a year, and Defendants provide no evidence that would justify converting the motion to dismiss into one for summary judgment. Accordingly, Defendants' motion to dismiss the Complaint on the ground that the partnership agreement violates the Statute of Frauds is DENIED.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

CONCLUSION

For the foregoing reasons, Plaintiff's motion to disqualify is DENIED AS MOOT, and Defendants' motion to dismiss (Docket Entry 13) is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   September __30__, 2015
         Central Islip, New York